804 P.2d 831

**EARTHWORKS CONTRACTING, LTD.,**
a Delaware corporation,
**Plaintiff–Appellant,**

v.

**MENDEL–ALLISON CONSTRUCTION OF CALIFORNIA, INC., a Colorado Corporation; Fireman's Fund Insurance Company, a California Corporation, Defendants–Appellees.**

No. 1 CA–CV 89–025.

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 13, 1990.

Reconsideration Denied Feb. 20, 1991.

Hart & Associates by James R. Hart, II, Mesa, for plaintiff-appellant.

Warner, Angle, Roper & Hallam, P.C. by Stephen E. Jackson and Pamela J. Culwell, Phoenix, for defendants-appellees.

## OPINION

JACOBSON, Presiding Judge.

The fundamental issue raised by this appeal is whether changes in the statutory requirements for licensing of contractors can constitutionally affect the right to recover for work performed on contracts entered into prior to the effective date of the legislation. In short, we must decide whether the application of the legislation unconstitutionally impairs the obligations of such contracts.

## FACTS AND PROCEDURAL HISTORY

On May 4, 1987, plaintiff Earthworks Contracting, Ltd. (Earthworks) and defendant Mendel–Allison Construction of California, Inc. (Mendel–Allison) entered into a written contract under which Earthworks agreed to act as a subcontractor in furnishing labor and materials to pave a parking lot for Mendel–Allison, which was acting as general contractor on a construction project known as "Fry's Center" in Peoria, Arizona. The Fry's Center project was a commercial construction project. Earthworks, at the time the contract was entered into, was not a licensed contractor, nor was it required by law to be licensed.

Prior to 1981, all contractors, whether they worked on commercial or residential construction projects, were required by Arizona law to be licensed. In 1983, the legis-

lature amended A.R.S. § 32–1101, to no longer require a contractor working on a commercial project to be licensed. The unregulated status of contractors working on commercial projects continued until 1986, when the legislature again amended A.R.S. § 32–1101 to require all contractors, whether they worked on residential or commercial projects, to be licensed. *See* Laws 1986, ch. 318, § 2. The legislature elected to delay the effective date of the amendment, however, specifying that it would become effective "from and after June 30, 1987." *See* Laws 1986, ch. 318, § 23.

Because of the huge volume of licensing requests being received immediately before the changes were to go into effect, in May 1987 the legislature enacted emergency provisions to allow for temporary licensing. These provisions allowed for three-month temporary licenses to be issued to anyone who had applied for a license prior to July 31, 1987, an extended application period, and had not received it before the effective date of the amendment. *See* Laws 1987, ch. 99, § 3, and historical note following A.R.S. § 32–1122.

Thus, when Earthworks entered into the contract for the Fry's Center on May 4, 1987, it was not required to be licensed. It continued working through August 27, 1987. However, the amended law requiring commercial contractors to be licensed went into effect on June 30, 1987, while Earthworks was still performing under its contract. Earthworks did not apply for a contractor's license, even during the extension period.

On March 29, 1988, Earthworks filed suit against Mendel–Allison and Fireman's Fund Insurance Company, the company that provided a surety bond for the project, alleging that Mendel–Allison had refused to pay for work performed on the project from May 6, 1987, to August 27, 1987. In its amended complaint, Earthworks sought

breach of contract damages in the amount of $166,000 or, alternatively, unjust enrichment damages in the amount of $180,000. In addition, Earthworks sought damages for tortious interference with contractual relationships.

Defendants moved to dismiss the amended complaint, arguing that Earthworks was precluded by A.R.S. § 32–1153 [1] from receiving any compensation for any work it had performed on the project because it lacked a license. Earthworks opposed the motion, arguing that it would be an unconstitutional impairment of its contract to apply the statute to preclude it from recovering under a contract it had entered into at a time it was not required to be licensed. Alternatively, it argued that it could not be precluded from recovering for the work performed before the change in the law took effect. The trial court agreed with defendants' position and dismissed Earthworks' claims for breach of contract and unjust enrichment, finding that Earthworks had failed to state a claim upon which relief could be granted.

Additionally, Mendel–Allison sought to dismiss the claim that it had interfered with the employment relationship between Earthworks and its employees, arguing that Earthworks' activity as an unlicensed contractor was unlawful and therefore Mendel–Allison could not be held liable for having induced Earthworks' employees not to perform their work on that job. The trial court also dismissed this claim, finding that Earthworks had failed to state a claim upon which relief could be granted. Earthworks timely appealed.

## DISCUSSION

### 1. *Breach of Contract and Unjust Enrichment Claims*

Earthworks makes two arguments in support of its contention that the trial

---

1. A.R.S. § 32–1153 provides:
    No contractor as defined in § 32–1101 shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when

the contract sued upon was entered into and when the alleged cause of action arose.
    Although this statute did not apply to Earthworks at the time it entered the contract because it was not then a "contractor" as defined in § 32–1101, at the time this suit was filed, Earthworks was a "contractor" according to amended § 32–1101.

court erred in dismissing its contract and unjust enrichment claims: (1) that requiring it to be licensed is an improper retroactive application of the amended statute, and (2) that if the statute requires Earthworks to be licensed in order to receive compensation for contractual obligations entered into prior to the effective date of the statute, the result is unconstitutional because it impairs the obligations of its contract in violation of art. I, § 10 of the United States Constitution and art. 2, § 25 of the Arizona Constitution.[2]

▇▇ We first dispose of the retroactivity argument. A statute is not retroactive in application simply because it may relate to antecedent facts. *Tower Plaza Investments, Ltd. v. DeWitt*, 109 Ariz. 248, 508 P.2d 324 (1973). The fact that A.R.S. § 32-1101 required, effective June 30, 1987, that contractors be licensed after that date does not result, in itself, in the retroactive application of the statute. However, the legislature also required that any contractor defined in § 32-1101 who commences an action to collect for work performed for which a license is required also has to allege that it "was a duly licensed contractor when the contract sued upon was entered into and when the cause of action arose." A.R.S. § 32-1153. This requirement could potentially lead to a retroactive application of the licensing statute, where, as here, the contract was entered into or the cause of action arose before the effective date of the licensing statute.

However, while this appeal has been pending, the legislature added a clarifying note to A.R.S. § 32-1153, explaining that that section does not operate to prevent a commercial contractor from recovering for work performed during the period in which it was not required to be licensed. This legislation, which has been added as an historical note to A.R.S. § 32-1153, provides:

Notwithstanding § 32-1153, Arizona Revised Statutes, a commercial contractor who was not required to be licensed by the registrar of contractors *from July 1, 1981 through June 30, 1987* and who performed any act for which a license was not required under title 32, chapter 10, Arizona Revised Statutes, *during this period* may maintain an action in any court of this state for collection of compensation for the performance of the unlicensed act without proof of being duly licensed when the contract sued on was entered and when the cause of action arose.

Laws 1989, ch. 98, § 3 (emphasis added).[3] Thus, we reject Earthworks' position that the licensing statute has been retroactively applied to work it performed prior to June 30, 1987. It may, however, result in an impairment of obligations entered into prior to that time, for unlicensed acts it was contractually obligated to perform after that date. Therefore, we must analyze whether the statute violates the constitutional prohibition against impairment of contracts.

▇▇ Mendel–Allison first argues that the constitutional prohibition of impairment of contracts is not involved because the statutory requirement that Earthworks be licensed does not operate upon the contract itself, but upon the property that is the subject matter of the contract, citing *Tower Plaza*. *Tower Plaza* dealt with the legislature's amendment of the Transaction Privilege Tax Act to apply to the business of

---

**2.** These constitutional provisions provide:
   No state shall ... pass any ... law impairing the obligation of contracts....
   Art. I, § 10, ¶ 1, United States Constitution.
   No law impairing the obligation of a contract shall ever be enacted.
   Art. 2, § 25, Arizona Constitution.

**3.** After learning this legislation had been passed and approved by the governor, Earthworks filed a motion asking this court to grant it an immediate remand to the trial court for new trial. We denied the motion, but indicated that we would consider, at the time of our disposition of this appeal, whether and to what extent the new legislation affects the rights of the parties. Because of our disposition on the constitutional issue, however, we need not address the applicability of this amendment to the present case. We note, however, that even if this amendment applied to these parties, Earthworks' right to recover for work performed from June 30, 1987, to August 27, 1987, would be impaired by the licensing requirement; thus, we would need to reach the constitutional issue in any event.

renting or leasing real property. The plaintiff landlords argued that because many of their leases predated the amendment, the tax was an unconstitutional impairment of contracts because it sought to tax transactions that were immune from taxation when consummated. The Arizona Supreme Court rejected this argument, holding, among other things, that the impairment prohibition was not implicated because the taxable event reached by the law was the prospective receipt of rental payments, not the leases out of which the payments arose. *Tower Plaza*, 109 Ariz. at 250–52, 508 P.2d at 326–28. Therefore, the law did not act upon the contract itself, but rather the property that was the subject of the contract.

The *Tower Plaza* analysis is not applicable here. Under the contract between Earthworks and Mendel–Allison, Earthworks was obligated to supply labor and materials and Mendel–Allison was obligated to pay for these services. The interpretation of the licensing amendment urged by Mendel–Allison and adopted by the trial court results in Mendel–Allison being relieved entirely of its obligation to pay Earthworks under the contract. Thus, the law, as applied, would operate to relieve one party of all of its obligations, clearly an impairment of that contract. Therefore, we hold that the law falls within the constitutional prohibition. We now turn to whether the legislature could constitutionally require such a result.

Mendel–Allison argues that even if the law impairs the obligations of the parties, the legislature could constitutionally do so because requiring that contractors be licensed is a proper exercise of the state's police power, and such proper exercise necessarily overrides the impairment prohibition. For this proposition Mendel–Allison cites the following reasoning of our supreme court:

> The right of contract may be regulated by proper use of the police power of the state. Legislation in aid of this police power carries with it a strong presumption of validity placing the burden of proof upon him who attacks it.... Such legislation can be annulled by court deci-

sion only if it is palpably in excess of legislative power, if it is without any rational basis, and if on no reasonable theory could it contribute to public health, welfare, or safety.

*American Federation of Labor v. American Sash & Door Co.*, 67 Ariz. 20, 30–31, 189 P.2d 912, 919 (1948).

This is a very broad statement. If we applied this statement literally, the impairment of contracts prohibition would be, for all practical purposes, abolished. It would be a rare piece of legislation indeed that could find no "reasonable theory" to support it. However, the breadth of the above statement must be considered in the factual and historical context of the legislation that was sought to be held unconstitutional in that case—Arizona's "right to work" law.

In the late 1940s, "right to work" laws, that is, laws assuring that no one could be denied a job because of non-membership in a labor union, were in vogue across the country, causing serious social discussion. Sixteen states had adopted similar laws at the time *American Federation* was decided. 67 Ariz. at 35, 189 P.2d at 922. The social and economic consequence of such legislation was a matter of great public concern. For example, the Arizona legislation was the result of a constitutional amendment adopted at a general election. *See* Ariz.Const. art. 4, pt. 1, § 1(2); Ariz. Sess. Laws 1947 at 399. Generally, the social need (or the perceived social need) for such legislation was nationally recognized.

Moreover, matters affecting employer/employee labor relationships had long been the subject of state legislation, for example, minimum wages, child labor laws, "blacklisting," workers' compensation laws. Therefore, the subject matter of most labor contracts was already subjected to state regulation. As was stated in a different context, "All contracts are made with reference to the taxing power of the state and in subordination to it." *Tower Plaza*, 109 Ariz. at 252, 508 P.2d at 328, quoting *State v. Clement Nat'l Bank*, 84

Vt. 167, 78 A. 944 (1911), *aff'd*, 231 U.S. 120, 34 S.Ct. 31, 58 L.Ed. 147 (1913). Likewise, it could be said that all labor contracts were subject to legislative regulation by the police power of the state.

Although the power of the legislature to preserve the public good under the police power is recognized and may in certain instances require rights under private contracts to be abrogated, the virtues of the impairment of contracts prohibition cannot be ignored. As Chief Justice Marshall stated:

> The power of changing the relative situation of debtor and creditor, of interfering with contracts, a power which comes home to every man, touches the interest of all, and controls the conduct of every individual in those things which he supposes to be proper for his own exclusive management, had been used to such an excess by the state legislatures, as to break in upon the ordinary intercourse of society, and destroy all confidence between man and man. This mischief had become so great, so alarming, as not only to impair commercial intercourse, and threaten the existence of credit, but to sap the morals of the people, and destroy the sanctity of private faith. To guard against the continuance of the evil, was an object of deep interest with all the truly wise, as well as the virtuous, of this great community, and was one of the important benefits expected from a reform of the government.

*Ogden v. Saunders,* 25 U.S. (12 Wheat.) 213, 216, 6 L.Ed. 606 (1827).

As has been recognized, the prohibition against legislative impairment of contracts is not an absolute one. However, we cannot ignore or render the prohibition completely ineffective based upon a currently popular legislative program, even if it is rational. This conflict between the power reserved to the state to deal with matters properly falling within its police power and the limitation on that power imposed by the impairment clause was recognized and reconciled when the United States Supreme Court dealt with legislation imposing a moratorium on foreclosure of mortgages and postponing execution sales during the Great Depression:

> Undoubtedly, whatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the state to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. But it does not follow that conditions may not arise in which a temporary restraint of enforcement may be consistent with the spirit and purpose of the constitutional provision and thus be found to be within the range of the reserved power of the state to protect the vital interests of the community.

*Home Building & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 439, 54 S.Ct. 231, 236, 78 L.Ed. 413 (1934).

■ What then are the "conditions" that may "be found to be within the range of the reserved power" so as to allow the police power to supersede the impairment limitation? The Supreme Court answered this question by equating the condition giving rise to the legislation to that of "a great public calamity such as fire, flood, or earthquake" or "where vital public interests would otherwise suffer." *Home Building & Loan Ass'n,* 290 U.S. at 439, 54 S.Ct. at 236. Although certainly the economic conditions resulting from the Great Depression qualified nationally under such a test, the Court's holding in this regard should not be taken as implying that only such a catastrophe would trigger the "reserved power." However, we can say that, at least, the condition that would allow legislation to impair contracts constitutionally must be of such magnitude as to bring to the general consciousness of the public a feeling of urgency and need. Anything less would unduly undermine the constitutional limitation against impairment of contracts.

With this balance of interests in mind, we turn to the amendment involved here—the imposition of licensing upon commercial contractors. The purpose of requiring licensing of building contractors is to protect the public, a purpose clearly within the police power of the legislature to regulate. *Arnold Constr. Co., Inc. v. Arizona Bd. of Regents,* 109 Ariz. 495, 512 P.2d 1229 (1973); *Northen v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951). However, the classification of members of the public who have been afforded this protection has fluctuated over the years, as evidenced by the multiple amendments to the statutes at issue here.

As previously indicated, prior to 1981, all contractors, residential and commercial, were required to be licensed. However, in 1983 the legislature implicitly determined that commercial builders and owners enjoyed the necessary sophistication to protect themselves; thus, the contractors they dealt with need not be licensed. This was the perceived public policy until 1986. At that time protection was again afforded to commercial owners, yet the law was not to be made effective until a year later. Then, even after the effective date of the legislation, the legislature provided an escape hatch for non-licensed commercial contractors who performed work under circumstances similar to those presented here. Such a legislative history does not indicate that the licensing of commercial builders was such an urgent social need that it should override a constitutional limitation and require that constitutional guarantees be foregone.

In this regard, we believe the reasoning and analysis of *Ward v. Chevron USA, Inc.,* 123 Ariz. 208, 598 P.2d 1027 (App. 1979), is applicable here. In that case, Division Two of this court found that the Petroleum Products Franchise Act, A.R.S. § 44–1551, should not be applied to a service station dealer's lease entered into prior to the effective date of the Act. The lease had made no provision for renewal. The Petroleum Products Franchise Act, however, imposed limitations on the power of terminating or failing to renew franchise agreements and established requirements regarding repurchase of merchandise on termination. The *Ward* court reasoned: "The rights and obligations of the parties vested on the date the agreements were executed. The law in force at that time formed a part of each contract." 123 Ariz. at 209, 598 P.2d at 1028. The court found that application of the Act would burden the contract with new obligations that did not exist at the time they were executed, thereby violating art. 2, § 25 of the Arizona Constitution. The court went on to note:

> Nor do we find that the circumstances satisfy the criteria for withstanding a contract clause attack that were applied in *Home Building and Loan Association v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), and recited in *Allied Structural Steel [v. Spannaus],* supra, 438 U.S. [234] at 242, 98 S.Ct. [2716] at 2721-2, 57 L.Ed.2d [727] at 735 [(1978)]. Factors found to be significant included a declaration in the act itself of an emergency need to protect a basic societal interest, and reasonable conditions tailored to the emergency and limited to its duration. Here, the legislature has not declared in the act itself the existence of such an emergency and the record does not establish one. Prospective application comporting with the contract clauses of both state and federal constitutions should provide the protection for which the law was enacted.

*Id.* at 210, 598 P.2d at 1029.

Similarly, as in *Ward,* we conclude that application of A.R.S. § 32–1153 to bar Earthworks' cause of action in this case would constitute an unconstitutional application of the statute that would impair Earthworks' right to collect for the work it performed under a contract it entered when it was not required to be licensed under A.R.S. § 32–1101. Likewise, not applying the prohibition against collection by unlicensed contractors to Earthworks in its contract with Mendel–Allison comports with the constitutional prohibitions. We therefore hold that the licensing requirements cannot constitutionally be applied to Earthworks' contractual claims, which are

based on obligations contractually incurred before the effective date of the licensing requirement.

### 2. *Claim For Interference With Contractual Relations*

■ Earthworks also contends that the trial court erred in dismissing its claim for interference with contractual relations. The trial court did not state its reason for concluding that Earthworks had failed to state an adequate claim for relief on this ground. The record does show, though, that defendants' sole basis before the trial court for requesting dismissal of this claim was premised on their contention that Earthworks' performance of the contract was unlawful because it was not licensed. Defendants reasoned that if the work Earthworks' employees were performing was unlawful, defendants could not be found liable for damages to Earthworks in interfering with that unlawful work.

On appeal, defendants have abandoned this argument. Defendants now argue, instead, that other grounds are presented in the record for upholding the dismissal of this claim. They argue that, even if the employees were lawfully performing, Earthworks suffered no pecuniary harm for Mendel–Allison's alleged interference with Earthworks' relations with its employees. Defendants note than an essential element of the tort of interference with contract is resultant damage to the party whose relationship or expectancy has been disrupted. *See, e.g., Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 386, 710 P.2d 1025 (1985); *Restatement (Second) of Torts* § 766 (1979). Defendants point to a letter Earthworks submitted in support of its opposition to the motion to dismiss, written by Earthworks' president to Mendel–Allison, in which he relates Mendel–Allison's *attempt* to hire Earthworks' manager. They argue that because Earthworks made no showing that its manager or any other employee *actually* terminated an employment contract, Earthworks' claim is defective.

■ We find it improper to sustain the trial court's dismissal of the interference with contract claim on the grounds being urged by defendants at this time. It is well-settled law that a reviewing court must affirm a judgment if possible on any theory framed by the pleadings and supported by the evidence. *See, e.g., Coronado Co. Inc. v. Jacome's Dep't Store, Inc.*, 129 Ariz. 137, 629 P.2d 553 (App.1981); *Lawrence v. Valley Nat'l Bank*, 12 Ariz. App. 51, 467 P.2d 763 (1970). Absent from the pleadings, though, is any allegation that Mendel–Allison merely attempted to have the employees breach their employment contract but were not successful in doing so.

Defendants filed no answer to the complaint in which they could have set forth this contention. The only pleading they filed was the motion to dismiss and in it they did not challenge Earthworks' statement that its employees were induced not to perform their contracts. Because defendants' pleadings did not challenge whether the attempt succeeded, Earthworks cannot be faulted for failing to produce additional evidence on this issue. On the present state of the record, we hold that the trial court erred in dismissing the claim for breach of contractual relations.

### ATTORNEYS' FEES ON APPEAL

In the exercise of our discretion, we grant Earthworks' request for an award of attorneys' fees on appeal pursuant to A.R.S. § 12–341.01 upon its compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

The order dismissing Earthworks' complaint is reversed and this matter is remanded for further proceedings.

LANKFORD and KLEINSCHMIDT, JJ., concur.