943 P.2d 758

Nancy L. LINDER and Charles G. Linder, Sr., Wife and Husband, Plaintiffs–Appellants,

and

Judith M. Prakel, Attorney–Appellant,

v.

BROWN & HERRICK, an Arizona General Partnership; Robert B. Kaufman, P.C., an Arizona Professional Corporation; Kaufman, Apker & Nearhood, P.C., an Arizona Professional Corporation; Lancy, Scult & McVey, P.A., an Arizona Professional Corporation; Sandra J. Schaller; et al.,

and

Lewis and Roca, an Arizona General Partnership; Rawlins, Burrus, Lewkowitz and Feinstein, P.C., an Arizona Corporation; Sue O. Schilleman, a Single Woman, and Trustee under Trust Agreement Dated July 21, 1982; et al., Defendants–Appellees.

No. 1 CA–CV 94–0533.

Court of Appeals of Arizona, Division 1, Department E.

Jan. 7, 1997.

Review and Cross–Petition for Review Denied Sept. 16, 1997.*

Reconsideration Denied Feb. 20, 1997.

---

* Jones, V.C.J., recused himself and did not participate in the determination of this matter.

Nancy L. Linder and Charles G. Linder, Sr., Chandler, in pro. per.

Judith M. Prakel, P.C. by Judith M. Prakel, Phoenix, Attorney–Appellant.

Broening, Oberg, Woods, Wilson & Cass, P.C. by James R. Broening and Kenneth C. Miller, Phoenix, for Defendants–Appellees Brown & Herrick.

Robert P. Kaufman by Robert P. Kaufman, Phoenix, for Defendants–Appellees Robert P. Kaufman, P.C. and Kaufman, Apker & Nearhood, P.C.

Turley & Swan, P.C. by Kent E. Turley, Phoenix, for Defendants–Appellees Schaller and Lancy, Scult & McVey, P.A.

Streich Lang, P.A. by Louis A. Stahl, Phoenix, for Defendant–Appellee Lewis & Roca.

Beale & Micheaels, P.C. by John A. Micheaels and Jennings, Strouss & Salmon, P.L.C. by Michael J. O'Connor, Phoenix, for Defendant–Appellee Rawlins, Burrus.

James W. Hill, Ltd. by James W. Hill, Phoenix, for Defendant–Appellee Schilleman.

## OPINION

GERBER, Presiding Judge.

Nancy L. Linder (Linder) and Charles G. Linder, Sr. (jointly the Linders) were losing parties in a prior lawsuit involving $20,000 held in a real estate escrow account. The stakes have grown since then.

In the present action, the Linders, represented by attorney Judith Prakel (Prakel), filed suit (1) for negligence against the attorneys who represented them in the prior lawsuit and (2) for fraud against the prevailing adverse party, Sue O. Schilleman (Schilleman), and her attorneys. The Linders, now *in propria persona,* appeal from the trial court's order granting all defendants' motions to dismiss for failure to state a claim. The Linders and Prakel also appeal from the trial court's imposition of Rule 11 sanctions and the denial of their motion for new trial. For reasons that follow, we affirm.

## BACKGROUND

### The TICOM Litigation

The underlying litigation arose from a dispute over the attempted sale of Apacheland Movie Ranch (Apacheland) in Apache Junction. The ranch was then owned by Schilleman. In 1985, Linder, a licensed real estate agent, contacted Schilleman with a potential buyer.

Schilleman and "Stephen S. Russell and/or Nominee" executed a purchase contract with a purchase price of $1,100,000, with $20,000 in earnest money to be deposited in escrow held by Title Insurance Company of Minnesota (TICOM). Russell paid half of the earnest money and Linder put up the other half.

The escrow instructions contained the following cancellation clause:

CANCELLATION

16. If either party elects to cancel these instructions because of the failure of the other party to comply with any of the terms hereof within the time limits provided herein, said party so electing to cancel shall deliver to Escrow Agent a written notice to the other party and Escrow Agent demanding that said other party comply with the terms hereof within thirteen days from the receipt of said notice by Escrow Agent or that these instructions shall thereupon become cancelled.

Both the escrow instructions and the purchase contract contained a "time is of the essence" clause. On November 6, 1986, Schilleman invoked this clause by demanding that escrow close by November 11, 1986. When escrow failed to close on that date, she asked TICOM to issue a thirteen-day cancellation notice to Russell and to advise him that unless he paid the amount due under the purchase contract by November 25, 1986, escrow would be cancelled and he would forfeit his earnest money. When Russell did not deposit the required amount into the account, she eventually cancelled the escrow.

TICOM then filed an interpleader action against Schilleman and Russell to determine the right to the $20,000 earnest money. Schilleman filed a cross-claim against Russell in which she alleged that she was entitled to the earnest money because he had failed to perform. She also filed a cross-claim against Linder in which she alleged that Linder not only brokered the transaction but also was an undisclosed buyer in violation of Arizona Department of Real Estate regulations. She sought a declaratory judgment that the purchase contract was thereby void or cancelled. For his part, Russell filed a cross-claim against Schilleman seeking specific performance of the contract.

The trial court granted summary judgment in favor of Schilleman and against Russell and Linder. It ruled that Schilleman was entitled to cancel the contract, that the contract did not provide for the sale of personal property, and that Linder failed to disclose in writing her status as a buyer. The court awarded Schilleman the $20,000 earnest money as well as $188,197.85 in attorneys' fees and costs.

Linder filed a motion for reconsideration which the trial court denied. The court then awarded Schilleman an additional $11,647 in attorneys' fees.

*The TICOM Appeal*

The Linders filed a timely appeal in the TICOM case separate from this appeal. In that appeal, they argued that (1) Linder was not a party to the contract; (2) even if Linder was a party, the trial court erred in ruling that Schilleman could cancel the contract because, in Linder's view, Schilleman's title was unmarketable and a dispute existed regarding whether personal property could be transferred pursuant to the contract; and (3) the trial court erred in awarding attorneys' fees against Linder.

In an unpublished memorandum decision in that appeal, Division Two of this court affirmed the trial court's judgment. *See Schilleman v. Leffler/Linder*, 2 CA–CV 90–0099 (October 30, 1990). The court noted that in her joint cross-motion for summary judgment, Linder "specifically claimed that she disclosed her dual status as purchaser and broker during negotiations with Schilleman." *Id.* at 7. The court further noted that in response to Schilleman's contention that she had violated Arizona Real Estate Regulations, Linder "argued that she had made adequate disclosure...." *Id.* The court concluded that because Linder once maintained that she was a party to the contract, "she [could] not change her position on appeal." *Id.* at 6.

With regard to Linder's argument that Schilleman could not cancel the contract because her title was unmarketable, Division Two of this court determined that the escrow instructions permitted either party to cancel the instructions if the other party failed to perform and that the "cancellation provision did not require the electing party to perform or tender performance." *Id.* at 9. Thus Schilleman had a contractual right to cancel escrow when Russell and Linder did not deposit the purchase money into escrow

by the closing date. The court further determined that the writings involved did not satisfy the statute of frauds as to personal property and therefore personalty was not included in the contract. Lastly, the court found no abuse of discretion in the trial court's award of attorneys' fees against Linder. The appellate court awarded Schilleman additional attorneys' fees and costs.

The Linders then filed a petition for review in the Arizona Supreme Court. The court denied the petition and awarded Schilleman additional fees. The Linders subsequently filed a Chapter 11 voluntary bankruptcy petition in the United States Bankruptcy Court, later converted to a Chapter 7 liquidation.

*The Present Case*

On July 8, 1993, the Linders, represented by attorney Prakel, filed an amended complaint in superior court alleging negligent representation by their former lawyers—the law firm of Brown & Herrick, through its attorneys Greg Brown and John Herrick, and the law firms of Robert P. Kaufman, P.C., Kaufman, Apker & Nearhood, P.C., and Lancy, Scult & McVey, P.A., through their attorney Sandra J. Schaller (Schaller).

The Linders further alleged that Schilleman, together with her former attorneys—the law firm of Lewis and Roca, through its attorneys Foster Robberson and Sheila Carmody, and the law firm of Rawlins Burrus Lewkowitz & Feinstein, P.C. (Rawlins Burrus), and its attorney Jeffrey Leonard—committed fraud by making false representations to the court and by withholding material information during this litigation.

The defendants filed motions to dismiss the amended complaint pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure, both for failure to state a claim and also for lack of standing. The trial court granted the defendants' motions for failure to state a claim. The court also granted Lewis and Roca's, Rawlins Burrus', and Schilleman's motions for sanctions pursuant to Rule 11, Arizona Rules of Civil Procedure, against the Linders and Prakel, jointly and severally, in the amount of $30,000. Following the trial court's denial of their motion for new trial or to amend judgment, the Linders and Prakel filed this timely appeal. They present the following issues for review:

1. Did the trial court err in dismissing the negligence claims?

2. Did the trial court err in dismissing the fraud claims?

3. Did the trial court abuse its discretion in awarding Rule 11 sanctions jointly and severally against the Linders and Prakel?

4. If the trial court properly imposed Rule 11 sanctions, was the amount excessive?

5. Did the trial court abuse its discretion in denying appellants' new trial motion? We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B) and (F)(1).

## DISCUSSION

### I. *Motions to Dismiss*

On review of a motion to dismiss for failure to state a claim, we take the allegations of the complaint as true. We will uphold the dismissal only if the plaintiff is not entitled to relief "under any facts susceptible of proof under the claims stated." *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984). We may affirm for reasons other than those relied upon by the trial court. *Earthworks Contracting Ltd. v. Mendel–Allison Constr. of Cal., Inc.,* 167 Ariz. 102, 109, 804 P.2d 831, 838 (App.1990).

### A. *Negligence Claims*

The Linders' complaint alleged that their former attorneys negligently represented them in the TICOM litigation. The negligence claims can be summarized as follows: their attorneys (1) misrepresented that Linder was a partner in the Apacheland transaction and (2) failed to investigate the relevance of the Schilleman–Stewart[1] litigation to the TICOM litigation. Specifically, in Count One of their amended complaint, the

---

1. Spencer Stewart is Schilleman's father and the former owner of Apacheland.

Linders alleged that attorney Greg Brown (Brown) and the Brown & Herrick firm "fail[ed] to apprise himself, and his clients, of the fact that Schilleman and the Stewarts were involved in the Schilleman–Stewart Litigation." This litigation was significant, according to the Linders, because Schilleman was alleging that the Stewarts had not provided her with an acceptable assumption statement concerning Apacheland and, additionally, had not resolved problems with its lease and personal property, all of which "prevent[ed] her from closing escrow with Russell." Brown thus "fail[ed] to establish with TICOM that Schilleman did not have the legal right to demand that TICOM issue to Russell the ... thirteen-day cancellation notices when Schilleman herself could not perform."

The Linders further alleged that attorney John Herrick and the Brown & Herrick firm were negligent in "failing to recognize that an actual conflict of interest existed in the Russells' and the Linders' position" in the TICOM litigation; in failing to inform them that their positions could not be represented jointly; in failing "to assert ... that Nancy Linder never actually became a nominee in the Apacheland Purchase Contract or a partner of Russell as a buyer"; and in failing to obtain a copy of the "Agency and Option Agreement ... with exhibits A and B attached."[2]

In Count Four of their amended complaint, the Linders alleged that attorney Schaller negligently failed to recognize the different legal positions of the Linders and the Russells; failed to inform the court that Schilleman could not demand performance from Russell when she could not perform by closing on the Apacheland contract; erred in stating to Judge Gottsfield during oral argument on February 12, 1988, that Linder and Russell were partners, thereby preventing Linder from prevailing in the lawsuit; and failed to correct attorney Robberson's statements at oral argument on April 27, 1988, that escrow officer Gail Johnson could have prepared a closing statement on November

11, 1986, and that Schilleman had the legal right to demand close of escrow on November 25, 1986.

■ With respect to the allegation that Linder's attorneys misrepresented her status as a buyer, thus preventing her from prevailing in the TICOM lawsuit and subsequent appeal, the trial court noted:

Plaintiffs contend that if Ms. Schaller had ignored the extensive deposition testimony of Ms. Linder and Mr. Russell and instead told the Court that Ms. Linder was a "potential buyer," this could have affected the outcome of the case. Judge Gottsfield ruled based on the entire record before him, including the depositions, that Ms. Linder was a "party" to the transaction.... An attorney has an obligation to deal fairly with a tribunal. Arizona Rules of Professional Conduct, Rule 3.3(a):

A lawyer shall not knowingly:

1. Make a false statement of fact of law to a tribunal;

2. Except as required by applicable law, fail to disclose a material fact to a tribunal when disclosure is necessary to exposing a criminal or fraudulent act by the client....

Ms. Schaller could not "unspeak" the sworn testimony of her client and her client's partner.

We agree with the trial court's reasoning. Linder's initial position was that she had made appropriate disclosure of her dual status as a broker and a buyer and thus satisfied real estate regulations. Such disclosure would have been unnecessary if she was not a buyer, as she now claims. However, Linder's affidavit as well as her own deposition testimony and that of Russell establish her true status as a buyer in the Apacheland transaction. She cannot now complain to us about what she said in her own words. Given her own statements, her attorneys in the TICOM litigation hardly could have "misrepresented" her status to the court. In fact, her attorneys were ethically foreclosed from maintaining that she was only a *"potential buyer,"* as Linder now contends they should

2. The Agency and Option Agreement allegation is discussed further under the heading titled

*"Fraud Claims." See infra* pp. 764–765.

have alleged. (Emphasis added.) If there is any misrepresentation, it lies in the discrepancy between Linder's sworn statements and her differing position in this appeal.

■ With respect to the allegations in the amended complaint regarding the Schilleman–Stewart litigation, we agree with the trial court that Division Two's memorandum decision resolved the central issue, namely, the effect of Schilleman's ability to perform on her right under the escrow instructions to cancel escrow:

> Under the escrow instructions, either party was permitted to cancel the instructions if the other party failed to perform. This cancellation provision did not require the electing party to perform or tender performance. Schilleman issued the required 13–day demand notice and the buyers did not perform. Her cancellation of the escrow instructions was valid.

*Schilleman,* 2 CA–CV 90–0099 at 9–10.

The *Schilleman* court ruled as a matter of law that the Schilleman–Stewart litigation did not affect Schilleman's right to cancel escrow when Linder and Russell failed to deposit their money on the required date. Further, the court determined that because the Wilderness/Schilleman agreement of sale [3] contained no restrictions on assignability, there was "no possibility of a successful attack on its assumability, and accordingly, Schilleman was able to tender a marketable title." *Id.* at 11. Regarding the leases on the property, the court found that because they were in default, Schilleman had the right to cancel them and retake possession and that such cancellation was not necessary to Schilleman's ability to perform "until . . . the buyers tendered the purchase price." *Id.* at 12. The court also found that personal property was not included in the transaction because there was no signed writing identifying specific property satisfying the statute of frauds. *Id.* at 14. Thus, no factual issue existed with respect to personalty to prevent summary judgment, as the Linders had contended. *Id.* at 15.

In light of this court's prior decision described above, the Linders now have no basis

for a claim of negligence against their attorneys for failure to investigate the Schilleman–Stewart litigation. Further, in light of Linder's own sworn testimony, the Linders have no basis for their claim of negligence against their attorneys in the Apacheland transaction. Accordingly, we affirm the trial court's grant of Brown & Herrick's and the Schaller defendants' motions to dismiss for failure to state a claim.

### B. *Fraud Claims*

The Linders' fraud claims against Schilleman and her attorneys, Lewis and Roca and Rawlins Burris, also relate to the Schilleman–Stewart litigation. In Count Five of their amended complaint, the Linders alleged that these defendants "knowingly made false representations to the Arizona Superior Court" during the TICOM litigation by "failing to disclose or produce the correct Agency and Option Agreement with its exhibits to Linders' counsel in response to Linders' Request for Production of Documents on or about June 30, 1987"; by "misrepresenting the relevance of the Schilleman–Stewart Litigation to this Lawsuit"; and by "misrepresenting Schilleman's ability to close the escrow on the Apacheland transaction." The Linders also alleged that these defendants made false representations to the court of appeals, supreme court, and the bankruptcy court regarding the SchillemanStewart Litigation. Count Six alleges resulting intentional or reckless infliction of emotional distress.

The essence of all these claims can be summarized as follows: had these defendants not misled the Linders' counsel and the court about the nature of the Schilleman–Stewart litigation (and had the Linders' own attorneys not negligently represented them), the Linders would have been able to make a winning argument that Schilleman was unable to perform and therefore unable to cancel escrow.

■ The Linders' claims are defective for several reasons. First, the Linders fail to plead all the essential elements of a fraud claim. Although there is no "magic lan-

---

**3.** The agreement of sale between Stewart (Wilderness) and Schilleman.

guage" required to state a claim for fraud, the complaint as a whole must be construed to plead all nine elements. *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (App. 1984). Justifiable reliance is one of those essential elements. Here, the Linders failed to allege that they justifiably relied on any statements made by opposing counsel. Indeed, as a matter of law and common sense, they had no right to rely on statements made by the attorneys opposing them. *See Lewis v. Swenson,* 126 Ariz. 561, 566, 617 P.2d 69, 74 (App.1980) (any duty owed by adverse counsel with respect to the conduct of litigation is "owed to the court, and not to the adverse party.") Thus, because they had no right to rely, the Linders' fraud claim is legally deficient.

■ Second, this court's holdings in the TICOM appeal resolve the issues raised in the Linders' complaint. These rulings cannot now be collaterally attacked. Division Two of this court determined that Schilleman was not obligated to convey personal property because no signed writing identified the specific property to be transferred. In the present case, the Linders alleged in their complaint that Schilleman and Lewis and Roca committed fraud by failing to produce the Agency and Option Agreement and its exhibits during discovery.[4] The Linders argue that if these documents had been produced, they might have shown that Stewart conveyed the personal property at Apacheland to Schilleman and that such writing might satisfy the statute of frauds with respect to the Apacheland transaction. In their view, because Apacheland was being sold to Russell by Schilleman partially by an assignment of her father's "Agreement of Sale" which incorporated the Agency and Option Agreement—Exhibit A of which presumably described personal property—these documents might have shown that "conveyance to Russell was supposed to include the personal property."

These contentions are specious. The Linders merely speculate about the contents of Exhibit A; neither the Linders nor Prakel have seen this document.[5] Further, even if we assume that Exhibit A described with particularity the personal property conveyed to Schilleman by Stewart, the present transaction still lacked a writing signed by Schilleman confirming that she agreed to sell and the buyers agreed to buy specifically identified personal property. Thus, even if this document had been produced during the TICOM litigation, it would not have affected the trial court's ruling on the personal property issue.

Division Two of this court also determined that Schilleman had the contractual right under the escrow agreement to cancel the escrow upon the buyer's nonperformance independently of her ability to perform. That decision rests on the broad language in the cancellation provision of the escrow instructions. That court found that *"[t]his cancellation provision* did not require the electing party to perform or tender performance." *Schilleman,* 2 CA–CV 90–0099 at 9 (emphasis added). Lewis and Roca's statements that the Schilleman–Stewart litigation was irrelevant to Schilleman's ability to cancel escrow rested on the language of this clause and therefore could not have been "misrepresentations" intended to deceive the court. The Linders fully litigated the performance issue and the personalty issue in the TICOM trial court and in the subsequent appeal to this court. The *Schilleman* judgment is final and cannot be collaterally attacked.

■ Third, and most basic, the Linders' fraud claims against opposing counsel are not recognized by Arizona law. In granting Lewis and Roca's motion to dismiss, the trial court ruled as follows:

> The critical issue is whether this Court should recognize a cause of action by a party against opposing counsel at the con-

---

4. At the Rule 11 hearing, the testimony showed that Schilleman had produced the Agency and Option Agreement in response to the Linders' June 30, 1987 request for production but had responded that she could not produce Exhibit A, which presumably described Apacheland personal property, because she did not have it. Prakel

admitted that she had seen the Agency and Option Agreement, which expired in 1978, for the first time only several days before this hearing.

5. Prakel also admitted at the Rule 11 hearing that she has never seen Exhibit A.

clusion of the lawsuit. Plaintiffs have sought to encourage this Court to adopt such lawsuits as the "more reasoned approach" to analyzing counsel's liability to third parties. But case law in Arizona, specifically, *Lewis v. Swenson,* 126 Ariz. 561, 617 P.2d 69 (App.1980), stands four-square against the proposition which Plaintiffs advocate.

No authority exists in Arizona for bringing a claim of fraud against an opposing attorney for statements made during litigation. To the contrary, case law narrowly limits claims against opposing counsel. Our law is clear. In *Lewis v. Swenson,* 126 Ariz. at 562, 617 P.2d at 70, the plaintiff in a medical malpractice action sued opposing counsel for alleged misconduct in failing to prevent an expert witness from commenting on high malpractice premiums in the jury's presence. In affirming the trial court's dismissal of the plaintiff's complaint, the *Lewis* court, in an opinion authored by now Justice O'Connor, quoted from *Norton v. Hines,* 49 Cal.App.3d 917, 123 Cal.Rptr. 237, 240 (1975):

> Clearly, an adverse party is not an intended beneficiary of the adverse counsel's client. If a cause of action exists against attorneys ..., it must be pleaded as an action for malicious prosecution. We see no reason to extend applicable law now found in cases involving attorneys and third parties *when there is sound and recognized public policy for limiting the cause of action to malicious prosecution.*

*Lewis,* 126 Ariz. at 564, 617 P.2d at 72 (emphasis added). The court noted that "reasons of public policy have caused courts to declare that there is an absolute privilege of attorneys and witnesses to state anything at trial which relates to the matter at issue." *Id.*

There are policy reasons supporting this view. In *Green Acres Trust v. London,* 141 Ariz. 609, 611, 688 P.2d 617, 619 (1984), plaintiffs brought a defamation action against defendants and their attorneys based on oral and written statements published during a press conference preliminary to the initiation of a class action against plaintiffs. In holding that an attorney's conduct during the course of judicial proceedings is absolutely privileged, our Supreme Court explained:

> In the area of absolute privileges one of the most common is that involving the participant in judicial proceedings. The socially important interests promoted by the absolute privilege in this area include the fearless prosecution and defense of claims which leads to complete exposure of pertinent information for a tribunal's disposition. The privilege protects judges, parties, lawyers, witnesses and jurors. *The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense.* Whether the privilege exists is a question of law for the court, and may be properly raised in a motion to dismiss. . . .

*Green Acres Trust,* 141 Ariz. at 613, 688 P.2d at 621 (citations omitted) (emphasis added); *accord, Western Technologies, Inc. v. Sverdrup & Parcel, Inc.,* 154 Ariz. 1, 4, 739 P.2d 1318, 1321 (App.1986) ("An absolute privilege exists for participants in judicial proceedings."); *Darragh v. Superior Court,* 183 Ariz. 79, 81, 900 P.2d 1215, 1217 (App.1995) ("One of the most widely recognized absolute privileges is that afforded participants in judicial proceedings.")[6]

In light of these well-established cases, the Linders' claims of fraud and intentional infliction of emotional distress against opposing counsel fail to comprise recognized causes of action. For all the reasons stated above, we affirm the trial court's grant of Lewis and Roca's, Rawlins Burrus', and Schilleman's motions to dismiss for failure to state a claim.

Although the Linders were foreclosed from bringing a fraud claim against opposing counsel, they had other remedies available to them which they did not utilize. Litigants who believe that their adversaries or their

---

**6.** Contrary to Prakel's assertion in her reply brief that *Darragh* "limited the holdings in *Western Technologies* and *Green Acres,*" this court held that the absolute privilege protected both the testimony and written appraisals of a judicial witness from suit. The court also held that the

plaintiffs could maintain a cause of action *under the federal RICO statute* "if they [could] present sufficient evidence, *independent of the immunized testimony and appraisals,* that Petitioner participated in the alleged conspiracy." (Emphasis added.)

adversaries' attorneys have been guilty of misconduct during litigation may file a motion under Rule 60(c), Arizona Rules of Civil Procedure, for relief from final judgment on the basis of:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . . ;(3) *fraud . . . , misrepresentation or other misconduct of an adverse party* . . . . The motion shall be filed within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment or order was entered or proceeding was taken.

(Emphasis added.)

Furthermore, attorneys are subject to the disciplinary power of the courts and the State Bar. *See* Ariz. R. Civ. P. 11; Rules of the Supreme Court, Rule 42.

## II. *Rule 11 Sanctions*

Both the Schaller defendants and the Lewis and Roca defendants filed motions for attorneys' fees and sanctions. Following an evidentiary hearing, the trial court denied the Schaller motions but granted the Lewis and Roca motions. The court assessed a total of $30,000 in attorneys' fees—$10,000 each to Lewis and Roca, Rawlins Burrus, and Schilleman—against the Linders and Prakel, ruling that these defendants should have judgment "jointly and severally . . . as a sanction for the violation of Rule 11."

In assessing these sanctions, the trial court explained:

> [T]here was not a good faith basis, after reasonable investigation, for the filing of this action by Plaintiffs against the fraud Defendants, Lewis and Roca, Rawlins and Burrus, and Sue Schilleman. . . . There is no authority in Arizona for such an action, and it is not and was not a reasonable extension of Arizona law to believe that such an action could be supported.

> \* \* \* \* \* \*

> Plaintiffs chose to ignore the existing authority of *Lewis v. Swenson; Western*

*Technologies v. Sverdrup & Parcel, Inc.;* and *Green Acres Trust v. London.*

(Citations omitted.)

 We review the trial court's order imposing Rule 11 sanctions for an abuse of discretion. *James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Protection,* 177 Ariz. 316, 317, 868 P.2d 329, 330 (App. 1993). Under Rule 11, the allegations of fraud must have been "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." The good faith component of Rule 11 does not turn on whether an attorney subjectively pursues claims in good faith. Instead, that rule embodies an objective standard about what a professional, competent attorney would do in similar circumstances to satisfy the rule's requirements. *Standage v. Jaburg & Wilk, P.C.,* 177 Ariz. 221, 230, 866 P.2d 889, 898 (App.1993).

 Here the fraud claims are not well grounded in fact. One of the Linders' and Prakel's chief allegations is that these defendants committed fraud by "failing to disclose or produce the correct Agency and Option Agreement with its exhibits" in response to their request for production of documents in 1987. However, testimony at the sanctions hearing revealed that Lewis and Roca had indeed produced this agreement at that time. Further, Prakel based certain allegations in the complaint on the contents of a document—Exhibit A—which she admitted she had not seen and which has yet to be produced and apparently has not even been found.

Additionally, Prakel has alleged that the defendants have committed fraud by misrepresenting the relevance of the Schilleman–Stewart litigation and its effect on Schilleman's ability to cancel the contract, despite this court's prior holding that Schilleman had a right to cancel escrow *regardless* of her ability "to perform or tender performance" *under the express terms of the cancellation provision.*

These claims are both factually and legally deficient. As discussed above, no authority exists in Arizona for a fraud claim against an

adversary or an adversary's attorney based on statements made during litigation. *See Lewis*, 126 Ariz. 561, 617 P.2d 69; *Green Acres Trust*, 141 Ariz. 609, 688 P.2d 617; *Western Technologies*, 154 Ariz. 1, 739 P.2d 1318. Moreover, Prakel has not made a good faith argument that existing law should be extended to encompass such fraud claims. She cites numerous cases as evidence of a legal trend to recognize such actions. However, with the exception of one case discussed below, all the cited cases are distinguishable. Most of the cases involve attorney conduct outside judicial proceedings. In other cases, the attorney conduct is governed by state or federal statutes or the cause of action is not based on fraudulent statements made during litigation.

Prakel primarily relies on *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992), a federal case that cited § 1983 cases in holding that absolute immunity, while generally available to government lawyers, is available to private lawyers only in defamation claims. She states in her reply brief that "[e]ven if *Robinson v. Volkswagenwerk* ... were the *only* case from another American jurisdiction directly on point which supported the Linders' claims against the Fraud Defendants, the existence of that holding, based on accepted common law principles, even if the Appellees want to argue that it was wrongly decided, would be alone sufficient to make this award of Rule 11 sanctions improper."

We do not agree that citing one dissimilar federal case from another jurisdiction demonstrates a good faith argument under Rule 11 for the modification of existing Arizona law. Admittedly, in *Smith v. Lucia*, 173 Ariz. 290, 299, 842 P.2d 1303, 1312 (App. 1992), this court found that an attorney's theory of the case, based on minority case law, was not objectively unreasonable for purposes of Rule 11. In that case, however, the applicable law was unsettled in Arizona and controlling precedent was lacking. In contrast, Prakel's attempt here to bring a fraud claim against opposing counsel runs directly contrary to long-standing, unwavering, recent and repeatedly affirmed Arizona

law. Similarly, her reliance on *Tucson Airport Authority v. Certain Underwriters at Lloyd's, London*, 186 Ariz. 45, 918 P.2d 1063 (App.1996), is also wholly misplaced because that suit concerned an insured's bad faith claim against its own insurer for breach of good faith and fair dealing during coverage. No such fiduciary loyalties exist between these parties and opposing counsel.

In a sampling of recent judicial and ethical views, the December 1996 issue of the *ABA Journal* finds no support whatsoever for the notion of suing an opposing attorney. Mark Hansen, *Taco Bell's Run for the Courthouse—Company's wrongful litigation suit against a plaintiff's lawyer is dismissed*, ABA Journal, Dec. 1996, at 20. To maintain such a claim, a court would have to find that a lawyer owed some duty to an opposing party and then breached that duty. Such a finding would necessarily create an automatic conflict of interest between a lawyer and client which would dilute if not destroy the lawyer's duty of aggressive and exclusive representation. Like the proverbial biblical servant, a lawyer cannot serve two opposing masters.

Given this entrenched Arizona precedent, Prakel had no objectively reasonable basis for believing that established Arizona immunity law would change in response to a sweeping argument supported by one dissimilar case from another jurisdiction. She therefore fails to meet Rule 11's good faith requirement.

In light of the foregoing discussion, it was untenable for Prakel to sue more than 190 individuals based on factually groundless allegations unwarranted by existing law and unsupported by a good faith argument for a change in Arizona law. These baseless claims needlessly extended litigation and caused the defendants substantial expense in defending them. We therefore find that the trial court properly exercised its discretion in awarding $30,000 in sanctions pursuant to Rule 11.

The Linders contend that the trial court erred in assessing Rule 11 sanctions against them as "non attorneys relying upon their chosen counsel's legal opinion." However, Rule 11 expressly allows the trial court to

impose upon an attorney, "a represented party, or both, an appropriate sanction."

Prakel argues that the amount of the sanctions is excessive. She states in her opening brief that "no inquiry was made as to [her] ability to pay the award." To the contrary, Prakel herself had the duty to present pertinent financial evidence to the trial court for its Rule 11 consideration. In fact, she presented none.[7] This court cannot consider on appeal evidence that was not before the trial court. *Dorman v. Swift and Co.*, 162 Ariz. 228, 231, 782 P.2d 704, 707 (1989). Because Prakel failed to meet her evidentiary burden of showing that the trial court abused its discretion in awarding $30,000 in sanctions, we have no way on this silent record to find the sanctions excessive.

Moreover, after reviewing Prakel's motion for new trial with its numerous exhibits, we find no abuse of discretion in the trial court's denial of this motion.

### III. *Request for Sanctions and Attorneys' Fees on Appeal*

Defendants request this court to award them attorneys' fees and sanctions on appeal pursuant to Rule 11, Arizona Rules of Civil Procedure, Rule 25, Arizona Rules of Civil Appellate Procedure, and A.R.S. sections 12–341.01(A) and (C) and 12–349(A)(1). In light of the financial hemorrhages that have already occurred, in the exercise of our discretion we decline to award any more monies to anyone.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment dismissing the Linders' complaint for failure to state a claim and assessing $30,000 in Rule 11 sanctions against the Linders and Prakel.

THOMPSON, J., concurs.

---

7. In her motion for new trial or to alter or amend the judgment, Prakel merely stated that if the court granted her request to have the Linders

VOSS, Judge, concurring in part and dissenting in part.

I agree with the majority in all respects with one exception. In affirming the trial court's assessment of $30,000 in sanctions, the majority correctly concludes that:

> it was untenable for Prakel to sue more than 190 individuals based on factually groundless allegations unwarranted by existing law and unsupported by a good faith argument for a change in Arizona law. These baseless claims needlessly extended litigation and caused the defendants substantial expense in defending them. . . .

However, the majority declines defendants' request for attorneys' fees on appeal. Because Prakel's allegations are equally groundless and costly on appeal, I would have awarded defendants attorneys' fees pursuant to Rule 25 and A.R.S. section 12–341.01.

---

relieved of the Rule 11 sanctions, leaving her alone liable, "the amount of sanctions should be reduced to reflect that decision."