311 P.3d 237

Nancy SITTON, Plaintiff/Appellant,

v.

**DEUTSCHE BANK NATIONAL TRUST CO. as Trustee Terwin Mortgage Trust 2007–4HE Asset–Backed Securities, Series 2007–4HE, a New York Trust; Specialized Loan Servicing, LLC, a Colorado limited liability company, Defendants/Appellees.**

No. 1 CA–CV 12–0557.

Court of Appeals of Arizona,
Division 1, Department C.

Sept. 5, 2013.

Law Offices of Beth K. Findsen, PLLC by Beth K. Findsen, Scottsdale, Attorneys for Plaintiff/Appellant.

Tiffany & Bosco, P.A. by Kevin P. Nelson, Natalya Ter–Grigoryan, Phoenix, Attorneys for Defendants/Appellees.

**OPINION**

SWANN, Judge.

¶ 1 In this case, we hold that a homeowner may not recover damages or unwind a trustee's sale when recorded documents concerning transfers of the lender's interest contain immaterial errors.

¶ 2 Nancy Sitton brought an action for quiet title and damages under A.R.S. § 33–420 based on allegedly false assignments and notices that were recorded before a trustee's sale of her home. The trial court entered summary judgment against her. We affirm because A.R.S. § 33–811(C) eliminated Sitton's claims to title upon the occurrence of the trustee's sale, and because A.R.S. § 33–420(A) does not support relief in favor of a person who could not have been harmed by a recorded misrepresentation.

## FACTS AND PROCEDURAL HISTORY

¶ 3 In February 2007, Sitton executed a promissory note secured by a deed of trust on her home. It is undisputed that she defaulted on the debt. The deed of trust identified SFG Mortgage as the lender, First American Title Insurance Company as the trustee, and Mortgage Electronic Registration System, Inc. ("MERS"), "acting solely as a nominee for Lender and Lender's successors and assigns," as the beneficiary.[1] The deed of trust provided that MERS held "only legal title" to the lender's interests but had the right to exercise the interests. The deed of trust also provided that the note and the deed of trust could be sold one or more times without notice, and that the deed of trust's covenants would bind the lender's successors and assigns.

¶ 4 In March 2007, Deutsche Bank National Trust Company, as trustee for the Terwin Mortgage Trust 2007–4HE Asset–Backed Securities, took custody of the note and the deed of trust under a Sale and Servicing

---

1. MERS is a private corporation that administers a national electronic registry to track the transfer of ownership interests and servicing rights in mortgage loans. Members assign their interests to MERS, and MERS becomes the mortgagee of record. When one member transfers an interest to another member, MERS privately tracks the assignment but remains the mortgagee of record, thereby allowing members to sell their interests without having to record the transactions in the public record. *Stauffer v. U.S. Bank Nat'l Ass'n,* 1 CA–CV 12–0073, 1 CA–CV 12–0132, 2013 WL 4430899, at *1, ¶ 2 n. 1 (Ariz.App.2013).

Agreement that provided for assignment of the loan from Terwin entities to Deutsche Bank. Deutsche Bank then transferred the note to Specialized Loan Servicing, Inc., a MERS-member loan servicing company authorized under the Sale and Servicing Agreement, so that Specialized could service and administer the loan.

¶ 5 At all relevant times, Specialized's corporate resolutions authorized Darren Bronaugh, an officer in Specialized's default administration department, to sign all documents required to be executed in connection with the responsibilities of his position. MERS's corporate resolutions also appointed Bronaugh as an officer of MERS for the purpose of taking all actions and executing all documents necessary to fulfill Specialized's servicing obligations to owners of MERS-registered loans.

¶ 6 In August 2010, the following occurred: (1) Bronaugh, on behalf of MERS "as nominee for SFG Mortgage," executed an assignment of the note and the deed of trust to Deutsche Bank; (2) Bronaugh, on behalf of Specialized as Deutsche Bank's "attorney in fact," executed a notice substituting Christopher Charles Rebhuhn as the trustee; and (3) Rebhuhn executed a notice of trustee's sale. Each of these documents was recorded in August 2010.

¶ 7 The trustee's sale that Rebhuhn noticed did not take place because Sitton and Specialized agreed to a loan modification. Sitton then failed to make payments under the modified loan. In February 2011, Specialized mailed Sitton a notice of default and intent to foreclose. In April 2011, the following preparations for foreclosure were made: (1) Bronaugh, on behalf of MERS "as nominee for SFG Mortgage," executed a second assignment of the deed of trust and the note to Deutsche Bank (because, according to Bronaugh, the first recorded assignment failed to specify that SFG Mortgage was an Arizona corporation); (2) Bronaugh, on behalf of Specialized as Deutsche Bank's "attorney in fact," executed a notice substituting Les Zieve as the trustee; and (3) Zieve executed a notice of trustee's sale. Each of these documents was recorded in May 2011.

¶ 8 In August 2011, before the trustee's sale, Sitton filed a complaint against SFG Mortgage, Deutsche Bank, and Specialized. Alleging material misstatements and other defects in the assignments and notices of substitution recorded in August 2010 and May 2011, as well as in the notice of trustee's sale recorded in May 2011, Sitton requested a monetary award under A.R.S. § 33–420(A) and an order quieting title to the property in her favor.

¶ 9 Deutsche Bank and Specialized filed a motion to dismiss, arguing that Sitton could not state a claim under § 33–420(A) because she lacked standing, the statute did not apply to the documents she challenged, and her claims were time-barred. Deutsche Bank and Specialized further argued that Sitton was not entitled to relief based on the facts alleged.

¶ 10 The court treated the motion to dismiss as one for summary judgment. Deutsche Bank and Specialized then filed a supplemental statement of facts, to which they attached evidence that included a declaration by Specialized's custodian of records. Sitton similarly filed a statement of facts to which she attached evidence. She also filed a motion to strike the declaration by Specialized's custodian. Deutsche Bank and Specialized then filed additional declarations— one by a Deutsche Bank vice president and one by the person who had acted as Specialized's custodian, who this time asserted that he was acting as MERS's "custodian of records ... for the limited purpose of verifying the documents." Sitton moved to strike these declarations as well.

¶ 11 The court did not expressly rule on Sitton's motions to strike. After oral argument, the court entered a signed minute entry granting the motion for summary judgment and dismissing Sitton's complaint. Sitton timely appeals, and we have jurisdiction under A.R.S. § 12–2101(A)(1).

*DISCUSSION*

I. *UNDER A.R.S. § 33–811(C), SITTON WAIVED HER CLAIMS TO TITLE OF THE PROPERTY BUT DID NOT WAIVE HER CLAIMS FOR A MONETARY AWARD UNDER A.R.S. § 33–420(A).*

¶ 12 We first address Deutsche Bank and Specialized's contention that Sit-

ton's appeal is moot under A.R.S. § 33–811(C). Section 33–811(C) provides:

> The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33–809 shall waive all defenses and objections to the [trustee's] sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale.

"Under this statute, a person who has defenses or objections to a properly noticed trustee's sale has one avenue for challenging the sale: filing for injunctive relief." *BT Capital, LLC v. TD Serv. Co. of Ariz.*, 229 Ariz. 299, 301, ¶ 10, 275 P.3d 598, 600 (2012). If a trustor fails to obtain injunctive relief and a trustee's sale is completed, she waives all claims to title of the property. *Id.* at 301–02, ¶¶ 11, 20, 275 P.3d at 600–01. She may also waive claims against the purchaser for tort damages. *Madison v. Groseth*, 230 Ariz. 8, 10–12, ¶¶ 1, 7, 10, 279 P.3d 633, 635–37 (App.2012) (damages claims against purchasers for conversion, fraud, and trespass waived because defenses and objections to sale were waived, and sale was the basis for the tort claims).

¶ 13 But failure to enjoin a trustee's sale does not waive claims for monetary awards under § 33–420(A). Section 33–811(C) contemplates the waiver of "defenses and objections to the sale" only, and nothing in § 33–420(A) provides a defense to a sale or makes recovery contingent upon a sale. *See State v. Mabery Ranch, Co.*, 216 Ariz. 233, 249, ¶ 74, 165 P.3d 211, 227 (App.2007) ("[T]here is a significant distinction between a cause of action for damages, such as that brought by

Mabery pursuant to A.R.S. § 33–420(A), and a cause of action to quiet title, which seeks a judicial determination of title, rather than damages...."); *see also BT Capital*, 229 Ariz. at 301–02, ¶¶ 15–16, 275 P.3d at 600–01 (distinguishing *Vinson v. Marton & Assocs.*, 159 Ariz. 1, 764 P.2d 736 (App.1988), which recognized damages claim when property was sold to third party in land sale contract dispute).

¶ 14 Here, after Deutsche Bank and Specialized secured summary judgment, they sought an order quashing the extended temporary restraining order that Sitton had obtained to prevent the trustee's sale. The court granted the motion to quash, and the property was sold at a trustee's sale in November 2012.[2] Under § 33–811(C), Sitton's unsuccessful attempts to enjoin the trustee's sale eliminated her claims for title to the property, including title claims based on § 33–420(A) and (D).[3] But it did not eliminate her claims for a monetary award under § 33–420(A). We therefore review de novo the superior court's grant of summary judgment on those claims, viewing the facts in the light most favorable to Sitton. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

## II. SITTON HAD STANDING TO BRING § 33–420(A) CLAIMS, AND THE TYPES OF DOCUMENTS SHE CHALLENGED FALL WITHIN THE SCOPE OF THE STATUTE.

¶ 15 The parties dispute whether Sitton had standing to assert a claim under A.R.S. § 33–420(A) and whether the statute allows claims based on the types of recorded documents she challenged. We conclude that Sitton had standing and that the alleg-

2. The trustee's deed upon sale is not a part of the record before us. But because it is available in the records of the Maricopa County Recorder, we take judicial notice of it. *See* Ariz. R. Evid. 201; *In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4, 10 P.3d 1211, 1212 (App.2000).

3. After the court quashed the restraining order, Sitton twice moved the superior court for an order enjoining the trustee's sale. The court deemed the first motion moot because the parties advised the court that the issue had been re-

solved, and the court never ruled on the second motion. The court lacked jurisdiction to rule on the second motion because Sitton filed it after she filed her notice of appeal. *Burkhardt v. Burkhardt*, 109 Ariz. 419, 421, 510 P.2d 735, 737 (1973). To obtain a ruling, Sitton could have sought an order from this court revesting jurisdiction in the superior court, *see BT Capital*, 229 Ariz. at 300, ¶ 4, 275 P.3d at 599, or she could have commenced a separate action in the superior court for injunctive relief. She did neither.

edly false documents fell within the statute's scope. A.R.S. § 33–420(A) provides:

A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

¶ 16 By its terms, § 33–420(A) authorizes "the owner or beneficial title holder of the real property" to bring an action. Construing identical language in § 33–420(B), we recently held in *Stauffer v. U.S. Bank National Association*, 1 CA–CV 12–0073, 1 CA–CV 12–0132, 2013 WL 4430899, at *5, ¶ 22 (Ariz.App.2013), that a trustor qualifies as an "owner." This construction is equally applicable to § 33–420(A). Under *Stauffer*, Sitton had standing to assert claims under § 33–420(A). The property's sale to a third party in 2012 has no effect on Sitton's ability to continue to litigate claims based on documents recorded while she was the owner.

¶ 17 Further, the documents that Sitton challenged fall within the scope of § 33–420(A). Sitton alleged defects in assignments of the note and deed of trust, notices of trustee substitutions, and a notice of trustee's sale. These are the same types of documents that the trustor in *Stauffer* challenged. *Id.* at *1, ¶ 1. As we explained in *Stauffer*, these types of documents are documents that claim an interest in real property, and are therefore covered by the statute. *Id.* at *2–3, ¶¶ 10–12.

## III. SITTON TIMELY ASSERTED HER § 33–420(A) CLAIMS.

¶ 18 Deutsche Bank and Specialized argued in the superior court that Sitton's claims under A.R.S. § 33–420(A) were subject to a one-year limitations period under A.R.S. § 12–541(5), and were time-barred be-

cause Sitton filed her complaint slightly more than one year after the first assignment and notice of substitution were recorded.

¶ 19 We agree with Sitton that her claims were not timebarred. Section 12–541(5) provides that a claim upon a liability created by statute must be asserted within one year of accrual *unless* the liability is a penalty or a forfeiture. A liability is a penalty if it allows for a minimum recovery even when the plaintiff has suffered no actual damages. *Gulf Homes, Inc. v. Gonzales*, 139 Ariz. 1, 6, 676 P.2d 635, 640 (App.1983), *vacated in part on other grounds by* 138 Ariz. 596, 676 P.2d 628 (1984). A penalty liability is exactly what § 33–420(A) prescribes: liability in an amount "not less than five thousand dollars, or … treble the actual damages caused by the recording, whichever is greater." Claims brought under § 33–420(A) are therefore not subject to the one-year limitations period prescribed by § 12–541(5), and are instead governed by the general four-year limitations period contained in § 12–550. Sitton's claims were timely.

## IV. DEUTSCHE BANK AND SPECIALIZED WERE ENTITLED TO SUMMARY JUDGMENT ON SITTON'S § 33–420(A) CLAIMS.

¶ 20 Deutsche Bank and Specialized were required as summary judgment movants to persuade the court that Sitton could not establish her prima facie case at trial. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶¶ 15–16, 180 P.3d 977, 980 (App.2008).

¶ 21 Sitton contends that the evidence showed that she could establish a prima facie case. She also contends that the superior court erred by not striking declarations that purported to show, in relevant part, Bronaugh's authority to act for Specialized, Bronaugh's authority to act for MERS, and the completion of assignments in 2007 pursuant to the Sale and Servicing Agreement. We conclude that the court did not abuse its discretion by considering the declarations, and that Deutsche Bank and Specialized were entitled to summary judgment because Sitton could not prove an essential element of her claims—material misrepresentations in the assignments.

**A.** *The Superior Court Did Not Abuse Its Discretion by Denying Sitton's Motions To Strike.*

¶ 22 Sitton moved to strike the declarations of Specialized's custodian of records, MERS's "limited purpose" custodian of records, and the Deutsche Bank vice president.[4] Sitton argued that the declarations lacked sufficient foundation, introduced inadmissible hearsay evidence, and improperly stated conclusions of law. She also argued that the Deutsche Bank vice president's declaration was untimely.[5]

¶ 23 Here, we assume that because the court did not expressly rule on Sitton's motions to strike, the court considered the evidence in the declarations. *See Taser Int'l, Inc. v. Ward*, 224 Ariz. 389, 393, ¶ 12 n. 7, 231 P.3d 921, 925 n. 7 (App.2010). We affirm the court's evidentiary rulings absent a clear abuse of discretion and resulting prejudice. *Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982).

¶ 24 There was no abuse of discretion here. Contrary to Sitton's contention, the declaration by Specialized's custodian of records contained sufficient foundation to support the admission of Specialized's business records. *See* Ariz. R. Civ. P. 56(e); Ariz. R. Evid. 602, 803(6), 902(11). The declaration's avowals were essentially factual descriptions despite the appearance of legal terms of art. *Cf. Florez v. Sargeant*, 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996) ("[A]ffidavits that *only* set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment." (emphasis added)).

¶ 25 The declaration by MERS's "limited purpose" custodian of records also had sufficient foundation. Contrary to Sitton's contention, the fact that the declarant's authority to act as MERS's custodian of records was

contained in the records themselves did not constitute "circular reasoning"—a witness's authority to certify a business's records is commonly supported by the records themselves.

¶ 26 Finally, the court had discretion to consider the Deutsche Bank vice president's declaration even though it was filed at the same time as Deutsche Bank and Specialized's reply. *See* Ariz. R. Civ. P. 7.1(a) (describing filing requirements for "[a]ffidavits submitted in support of any answering memorandum or memorandum in reply"). The vice president's declaration supplemented the evidence that Deutsche Bank and Specialized had submitted with their statement of facts, including the first declaration that Sitton had moved to strike. *See* Ariz. R. Civ. P. 56(e)(2) ("Affidavits may be supplemented or opposed by . . . additional affidavits or other material that would be admissible in evidence."). And though the vice president's declaration added, for the first time, evidence that Deutsche Bank took possession of the note and the deed of trust in 2007 under the Sale and Servicing Agreement, this evidence did not prejudice Sitton—it actually confirmed a central tenet of her argument that the later, recorded assignments misstated the assignment dates and the assignor's identity.

**B.** *As a Matter of Law, Sitton Could Not Prevail on Her § 33–420(A) Claims Because the Assignments' Misrepresentations Were Not Material to Her.*

¶ 27 Sitton contends that there was a genuine issue of material fact regarding SFG Mortgage's authority to make valid assignments, because (1) according to Sitton's expert witness, closing documents identified entities other than SFG Mortgage as the original lender, and (2) SFG Mortgage had

---

**4.** Though Sitton's complaints regarding the MERS and Deutsche Bank declarations were articulated in a pleading styled an "Objection," the relief she requested was that the declarations be stricken in whole or in part.

**5.** Such motions to strike are unnecessary. *Engel v. Landman*, 221 Ariz. 504, 509, ¶ 15 n. 2, 212 P.3d 842, 847 n. 2 (App.2009). Objections to a movant's filings are properly made in the response to the motion, and a separate motion is neither required nor authorized by any rule. Ab-

sent extraordinary circumstances or those expressly contemplated in Rule 12(f), motions to strike usually waste the time of the court and the resources of the parties. An objection is all that is necessary to alert the court to the need to disregard legally infirm evidence, and such evidence should be disregarded—not stricken from the record. Effective January 1, 2014, motions such as those filed here will be expressly prohibited by Ariz. R. Civ. P. 7.1(f).

filed for bankruptcy and been dissolved by the corporation commission years before the recorded assignments were executed. But even assuming the truth of the facts on which Sitton relies, those facts do not provide grounds for her to recover under § 33–420(A).

¶ 28 The obligation to pay, and the right to foreclose upon a failure to pay, was created by the note and the deed of trust—not other documents associated with closing. Both the note and the deed of trust unambiguously named SFG Mortgage as the lender. Further, SFG Mortgage's legal status was immaterial after the deed of trust was executed. The deed of trust clearly named MERS as SFG Mortgage's nominee and the beneficiary, and provided that MERS had the right to exercise SFG Mortgage's interests. MERS was the mortgagee of record and could assign the note and the deed of trust without regard to SFG Mortgage's legal status. *See Rosa v. Mortgage Electronic Sys., Inc.*, 821 F.Supp.2d 423, 431 (D.Mass.2011) (" '[T]he fact that the debtors' promissory note passed like a hot potato down a line of owners, including some in bankruptcy and liquidation, with no accompanying assignment of the note owner's beneficial interest in the mortgage, changes nothing,' because 'MERS remained the mortgagee in its capacity as trustee and as nominee for whomever happened to own the note.' " (quoting *In re Marron*, 455 B.R. 1, 7 (Bankr.D.Mass.2011))).

■ ¶ 29 Sitton also contends that there was a genuine issue of material fact regarding whether the recorded assignments contained material misstatements about the assignment dates and the assignor's identity. We agree with Sitton that the recorded assignments contained misrepresentations along these lines.

¶ 30 If assignments were made pursuant to the Sale and Servicing Agreement (a condition that the Deutsche Bank vice president's declaration confirmed), then MERS (for SFG Mortgage) assigned the note and the deed of trust in 2007: the interests came to a Terwin entity (either directly or through an intervening chain of assignments) and then, pursuant to the Sale and Servicing Agreement, the Terwin entity caused the interest's assignment to Deutsche Bank. This history is not reflected in the assignments recorded in 2010 and 2011. The recorded assignments instead represent that MERS (for SFG Mortgage) directly assigned the interest to Deutsche Bank in 2010 and 2011. The assignments therefore misstate the undisputed facts.

■ ¶ 31 Section 33–420(A) requires the claimant to show that a person caused a document to be recorded "knowing or having reason to know that the document is forged, groundless, contains a *material* misstatement or false claim or is otherwise invalid." (Emphasis added.) To determine whether misrepresentations in the documents at issue here were material, we apply our traditional definition of materiality from the law of fraud: "A misrepresentation is material if a reasonable person 'would attach importance to its existence or nonexistence in determining [his or her] choice of action in the transaction in question.' " *Caruthers v. Underhill*, 230 Ariz. 513, 521, ¶ 28, 287 P.3d 807, 815 (App.2012) (quoting Restatement (Second) of Torts § 538(2)(a) (1977)) (alteration in original). In other words, a misrepresentation is material to a person if she could reasonably rely on it.

¶ 32 Here, both recorded assignments falsely represented the assignment dates and the identity of the assignor for whom MERS was then acting as nominee. Also, the second recorded assignment was superfluous. The misrepresentations in the recorded assignments could be material to an assignee who received its interest before the recorded assignments were made part of the public record. Such an assignee, when deciding whether to purchase or accept the interest, could reasonably have relied on the nonexistence of the transactions described by the recorded assignments. And a subsequent assignee (or potential assignee) could reasonably rely on the *existence* of the described transactions. But these misrepresentations were not material to Sitton because the timing and sequence of the assignments could have had no effect on Sitton's choice of actions.

¶ 33 Sitton borrowed money and incurred liability under the note. The lender per-

formed fully at the time of closing; Sitton did not perform. Her choices were to repay the money pursuant to the terms of the note, renegotiate the terms of the note, or default and cause foreclosure. Her liability on the note remained the same no matter who was assigned as beneficiary, or when. The misrepresentations in the recorded assignments were therefore immaterial to her as a matter of law.[6]

¶34 Because Sitton could not show that the assignments contained a *material* misstatement or false claim, she could not prevail on her § 33–420(A) claims. Even if Bronaugh knew or should have known of the misstatements, as Sitton argues, Sitton was not entitled to relief. Summary judgment in favor of Deutsche Bank and Specialized was appropriate.

## CONCLUSION

¶35 We affirm for the reasons set forth above. Deutsche Bank and Specialized request attorney's fees on appeal under A.R.S. §§ 12–341.01 and 12–349. Deutsche Bank and Specialized are not entitled to fees under § 12–341.01 because this action did not "arise out of contract" within the meaning of that statute. *See, e.g., Caruthers,* 230 Ariz. at 526, ¶57, 287 P.3d at 820 (holding that for purposes of § 12–341.01 fee award, contract must be essential basis of action and not mere factual predicate). In our discretion, we deny Deutsche Bank and Specialized's request for fees under § 12–349. As the prevailing parties, Deutsche Bank and Specialized are entitled to an award of costs under § 12–341, upon their compliance with ARCAP 21.

CONCURRING: DIANE M. JOHNSEN, and RANDALL M. HOWE, Judges.

---

**6.** A misrepresentation concerning a beneficiary's identity could be material to a trustor in some circumstances. For example, a trustor who qualifies for the protection of Arizona's anti-deficiency statute might reasonably rely on a putative beneficiary's claim when deciding whether to contest a trustee's sale for that party's benefit. In such circumstances, a trustee's sale for the true beneficiary would absolve the trustor of further liability, but a trustee's sale for any other entity could leave the trustor still liable to the beneficiary. Accordingly, when the record supports an inference that the putative beneficiary was not the correct party, the trustor should be entitled to discovery. Here, however, Sitton has failed to point to anything in the record to suggest that Deutsche Bank was not the true beneficiary.