NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GARY I. GLAVA and SUSAN S. GLAVA, his wife, *Plaintiffs/Appellants*,

*v.*

JPMORGAN CHASE BANK, N.A., *Defendant/Appellee*.

No. 1 CA-CV 13-0719
FILED 2-26-2015

Appeal from the Superior Court in Maricopa County
No. CV2013-010051
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

COUNSEL

Law Offices of Ronald W. Meyer, Phoenix
By Ronald W. Meyer
*Counsel for Plaintiffs/Appellants*

Maynard Cronin Erickson Curran & Reiter PLC, Phoenix
By Douglas C. Erickson
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1        Gary and Susan Glava appeal from the dismissal of their complaint against JPMorgan Chase Bank (the Bank), which alleged various misconduct by the Bank related to the execution and performance of a Home Affordable Modification Program (HAMP) agreement that ultimately led to a trustee's sale of their home.  The Glavas argue their claims do not concern the validity of the trustee's sale, and the trial court erred in determining they were barred by Arizona Revised Statutes (A.R.S.) section 33-811(C).[1]  For the following reasons, we affirm the dismissal of the Glavas' claims for recording false documents, wrongful forfeiture, breach of fiduciary relationship, and intentional infliction of mental distress, but reverse the dismissal and remand for further proceedings with respect to their claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and consumer fraud.

### FACTS[2] AND PROCEDURAL HISTORY

¶2        The Glavas owned residential real property subject to a mortgage held by the Bank.  In 2012, they applied for a loan modification through HAMP.  During the application process, the Bank represented that, if the loan modification was approved, a previously recorded Notice of Trustee's Sale, dated February 26, 2010, and arising from an alleged breach of the original loan agreement, would be cancelled.  The HAMP agreement

---

[1]        Absent material revisions from the relevant date, we cite a statute's current version.

[2]        In reviewing a motion to dismiss, "we review the well-pleaded facts alleged in the complaint as true," *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4, 121 P.3d 1256, 1259 (App. 2005), and resolve all reasonable inferences in favor of the plaintiff. *McDonald v. City of Prescott*, 197 Ariz. 566, 567, ¶ 5, 5 P.3d 900, 901 (App. 2000).

was ultimately approved, and pursuant to its terms, became effective automatically when the Bank signed and returned it to the Glavas on September 7, 2012. The first payment was due September 1, 2012.

¶3 The Glavas did not make any payments from September through December 2012, without any objection or notification of default from the Bank. They attempted to make payments in January, February, and March 2013, but the funds were returned by the Bank without explanation. When prompted for a reason, the Bank stated it had incorrectly calculated the monthly payment amount, and thereafter provided a revised payment coupon-book reflecting the corrected amount. Still, no default was asserted.

¶4 The Glavas then attempted to make payments for April, May, and June 2013. These funds were again returned without explanation. When the Glavas inquired as to the reason, the Bank again indicated it had incorrectly calculated the payment amount. The Bank did not, however, provide a corrected payment amount, indicate any problem existed with the HAMP agreement, or notify the Glavas of any alleged breach.

¶5 The following month, in July 2013, the Bank proceeded with the trustee's sale noticed in February 2010, and recorded a trustee's deed upon completion of the sale. The Glavas thereafter filed this action, alleging breach of contract, fraud, recording of false documents, consumer fraud, breach of the covenant of good faith and fair dealing, breach of a fiduciary relationship, wrongful forfeiture, and intentional infliction of mental distress. These claims arose, in large part, from the allegedly false representations by the Bank that approval of the HAMP agreement would result in the cancellation of the previously noticed sale, which had been premised upon an alleged breach of the original loan agreement.

¶6 The Bank filed a motion to dismiss, arguing the Glavas' claims were barred under A.R.S. § 33-811(C), which provides that "all defenses and objections" to a trustee's sale are deemed waived if not raised in an action resulting in an injunction prior to the sale. The Bank contended that the basis of each claim was that the trustee's sale was wrongful because either the power to sell had been revoked, or because the Glavas believed the loan modification precluded the sale. The Bank further asserted the Glavas failed to make required payments under the modification agreement, noting payments were to start on September 1, 2012, and the Glavas admitted they did not proffer payments until January 2013.

¶7 The trial court granted the Bank's motion, finding that, pursuant to A.R.S. § 33-811(C), the Glavas' claims did not survive the trustee's sale. The Glavas timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶8 We review a decision granting a motion to dismiss *de novo*.[3] *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012). We will affirm the dismissal only if the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998). In our review, we consider the pleading, documents attached to and referenced within the pleading, as well as public records. *Strategic Dev.*, 224 Ariz. at 63-64, ¶¶ 10, 13, 226 P.3d at 1049-50.

I. **The Glavas' Claims for False Recording and Wrongful Forfeiture Were Waived Pursuant to A.R.S. § 33-811(C).**

¶9 The Bank argues,[4] and the trial court concluded, A.R.S. § 33-811(C) barred all of the Glavas' claims. As previously noted, that section provides that a trustor waives "all defenses and objections to the [trustee's] sale" not raised in an action resulting in the entry of an injunction by the

---

[3] Citing *Strategic Development & Construction, Inc. v. 7th & Roosevelt Partners, L.L.C.*, 224 Ariz. 60, 64, ¶ 16, 226 P.3d 1046, 1050 (App. 2010), the Bank asserts we review the trial court's dismissal for an abuse of discretion. But our supreme court in *Coleman* clarified that "[b]ecause questions of law are reviewed de novo, the grant of a dismissal under Rule 12(b)(6) is reviewed de novo." 230 Ariz. at 356, ¶¶ 7-8, 284 P.3d at 867 (internal citation omitted).

[4] Throughout its answering brief, the Bank consistently cites to unreported memorandum decisions from federal district courts and unpublished memorandum decisions from other jurisdictions in support of its arguments. We have not considered and do not address these cases. *See* ARCAP 28(c) (2014); *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377 n.3, 701 P.2d 1182, 1185 n.3 (1985) (determining ARCAP 28(c) prohibits citation to unpublished federal court decisions); *Walden Books Co. v. Dep't of Revenue*, 198 Ariz. 584, 589, ¶ 23, 12 P.3d 809, 814 (App. 2000) (holding ARCAP 28(c) prohibits citation to out-of-state memorandum decisions); *see also* Ariz. R. Sup. Ct. 111(c)(1) (setting forth limited circumstances for citation to memorandum decisions, which are not present here).

last business day before the sale. A.R.S. § 33-811(C). By its plain language, A.R.S. § 33-811(C) "prescribes waiver only to objections and defenses to the sale." *Morgan AZ Fin., L.L.C. v. Gotses*, 235 Ariz. 21, 24, ¶ 8, 326 P.3d 288, 291 (App. 2014) (internal quotations omitted). "[A] trustor who fails to enjoin a trustee's sale waives his claims to title of the property upon the sale's completion, and also waives any claims that are dependent on the sale." *Id.* at 23-24, ¶ 7, 326 P.3d at 290-91 (citing *BT Capital, L.L.C. v. TD Serv. Co. of Ariz.*, 229 Ariz. 299, 301, ¶ 10, 275 P.3d 598, 600 (2012) (waiver of claims to title), and *Madison v. Groseth*, 230 Ariz. 8, 13, ¶ 15, 279 P.3d 633, 638 (App. 2012) (waiver of claims dependent upon the sale)). A trustor who fails to enjoin a sale does not, however, waive claims that are independent of the sale. *Id.* at 23, ¶¶ 8-10, 326 P.3d at 291.

¶10        In *Madison*, a trustor sued the purchasers of property at a trustee's sale, asserting claims for conversion, fraud/deceit, and trespass based upon an allegation that the property was wrongly sold. 230 Ariz. at 12, ¶ 10, 279 P.3d at 637. The trustor sought the return of the property, as well as compensatory and punitive damages. *Id.* at 11, ¶ 7, 279 P.3d at 636. We held the tort claims waived as a matter of law under A.R.S. § 33-811(C) because they were dependent upon objections to the validity of the trustee's sale. *Id.* at 13, ¶ 15, 279 P.3d at 638. As the trustor in *Madison* could not prevail on claims against the purchasers absent a determination that the sale itself was unlawful, the trustor had waived her right to assert those claims post-sale.

¶11        In contrast, we held in *Sitton v. Deutsche Bank National Trust Co.* that a trustor who unsuccessfully enjoined a trustee's sale had not waived claims for monetary damages under A.R.S. § 33-420(A) for the pre-sale recording of false documents related to the property. 233 Ariz. 215, 218, ¶¶ 13-14, 311 P.3d 237, 240 (App. 2013). Sitton had alleged material misstatements and other defects in assignments, notices of substitution, and the notice of trustee's sale. *Id.* at 217, ¶ 8, 311 P.3d at 239. While concluding that Sitton's unsuccessful attempt to enjoin the trustee's sale waived her claim to quiet title, we nevertheless found that her claim under A.R.S. § 33-420(A) was not a defense to the sale and recovery was not contingent upon the invalidity of the sale, and therefore A.R.S. § 33-811(C) did not preclude her claims for monetary damages based upon the pre-sale recording of allegedly false documents. *Id.* at 218-19, ¶¶ 13-14, 16, 311 P.3d at 240.

¶12        We recently reached a similar conclusion in *Morgan AZ Financial*. In that case, the trustors failed to obtain an injunction of a trustee's sale of their property. 235 Ariz. at 22-23, ¶ 2, 326 P.3d at 289-90. When the lender's successor-in-interest subsequently filed an action

seeking a deficiency judgment under A.R.S. § 33-814(A), the trustors asserted the creditor had obtained the loan documents from the original lender subject to fraud-based defenses that made the loan documents void and unenforceable. *Id.* at 23, ¶ 3, 326 P.3d at 290. The trial court found the trustors had waived their defenses under A.R.S. § 33-811(C). *Id.* at ¶ 4. On appeal, we reversed, reasoning the language of A.R.S. § 33-811(C) applied strictly to defenses and objections to the sale, and "does not operate to deprive the trustor of the ability to pursue claims or defenses that are independent of the sale." *Id.* at 24, ¶ 8, 326 P.3d at 291. As no prior judgment precluded the defenses asserted, we concluded the defenses were available to the trustors in a separate deficiency action. *Id.* at ¶¶ 9-10.

¶13　　　　As recognized in these cases, A.R.S. § 33-811(C) prescribes waiver only to defenses and objections "to the sale." *Sitton*, 233 Ariz. at 218, ¶ 13, 311 P.3d at 240; *Morgan AZ Fin.*, 235 Ariz. at 42, ¶ 8, 326 P.3d at 291. The same arguments that could have been made in an unsuccessful attempt to enjoin a sale, and which would therefore be waived under A.R.S. § 33-811(C) with respect to claims for title to the property or claims depending on the invalidity of the sale, are not barred from being pursued in actions that do not challenge title or the sale. With this in mind, we turn to the claims raised in the Glavas' amended complaint.

¶14　　　　Of the eight claims, only two were based and dependent upon the alleged invalidity of the trustee's sale — false recording of a document and wrongful forfeiture. As to the former, the Glavas claimed the recording of the post-sale trustee's deed constituted the recording of a false document in violation of A.R.S. § 33-420(A). That statute allows the owner of real property to collect damages from a person who causes a document to be recorded against real property knowing or having reason to know that the document is forged, groundless, contains a material misstatement, or is otherwise invalid. A.R.S. § 33-420(A). The Glavas' false recording claim necessarily depends upon a determination that the sale was improper. If the sale was not improper, the trustee's deed could not be a false document. Unlike *Sitton*, where the false recording claims were based upon alleged misstatements and other defects in documents that existed irrespective of the subsequent trustee's sale, 233 Ariz. at 217, 219, ¶¶ 8, 17, 311 P.3d at 239, 241, the complained of document in this case only becomes false if the trustee's sale was improper. Therefore, the trial court properly found that claim had been waived. In addition, the Glavas' claim for wrongful forfeiture is, by its very nature, also based upon their assertion that the sale

was invalid. As in *Madison*, these claims were waived through the application of A.R.S. § 33-811(C).[5]

**¶15** The Glavas' remaining six claims are breach of contract, breach of the duty of good faith and fair dealing, fraud, consumer fraud, breach of a fiduciary relationship, and intentional infliction of mental distress. These claims are more akin to those in *Sitton* and *Morgan AZ Financial*. Although they are related to the sale, and the legal theories might have been articulated in seeking an injunction of the sale, these claims as they are articulated do not challenge the sale and are not founded upon the sale's invalidity. Instead, they arise from allegations that the Bank represented the trustee's sale would be canceled upon execution of the HAMP agreement, the agreement was indeed executed, the Bank led the Glavas to believe the sale had been cancelled, and acted as if the agreement were in force and effective by calculating and recalculating new payment amounts under the modified agreement, and yet the Bank nevertheless maintained its ability to proceed with the sale and ultimately conducted the trustee's sale without further notice, thereby denying the Glavas the opportunity to attempt to enjoin the sale. The Glavas contend the Bank's representations and conduct engendered various torts, a statutory violation, and a breach of the HAMP agreement, independent of whether the sale was valid, and they do not challenge title to the real property.

**¶16** A major purpose of the statutes governing deeds of trust is to provide for expeditious and inexpensive foreclosures. *Andreola v. Ariz.*

---

[5] Even had these claims not been waived, they were properly dismissed on other grounds as well. Under A.R.S. § 33-420(A), an owner of real property may collect damages for the recording of a false document purporting to claim an interest in that real property, but only based upon documents recorded when that person owned the property — i.e., before a sale. *Sitton*, 233 Ariz. at 219, ¶¶ 16-17, 311 P.3d at 241. The Glavas' § 33-420(A) claim, however, is based upon the recording of the post-sale trustee's deed. Of necessity, by the time the trustee's deed was recorded, the property had already been sold. *See* A.R.S. § 33-810(A) (stating the sale is complete upon payment, and that the execution, delivery and recording of the deed are ministerial). Because the Glavas were no longer the owners of the property when the deed was recorded, they could not maintain this claim as a matter of law.

Additionally, the wrongful foreclosure claim was properly dismissed, as no such cause of action has been recognized in Arizona. *See In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 784 (9th Cir. 2014).

*Bank*, 26 Ariz. App. 556, 559, 550 P.2d 110, 113 (App. 1976); *see Morgan AZ Fin.*, 235 Ariz. at 23, ¶ 7, 326 P.3d at 290 (noting trustee's sales "are meant to operate quickly and efficiently, 'outside of the judicial process.'") (quoting *Hogan v. Wash. Mut. Bank, N.A.*, 230 Ariz. 584, 587, ¶ 12, 277 P.3d 781, 784 (2012)). Consistent with that policy, A.R.S. § 33-811(C) ensures finality of the sale upon completion. Nothing in the statutes or their apparent purpose, however, supports construing A.R.S. § 33-811(C) in a manner that would immunize a lender from liability for conduct constituting a separate tort or contractual breach merely because a trustee's sale occurred. Therefore, the Glavas did not waive their remaining claims under A.R.S. § 33-811(C).

## II. Dismissal of the Glavas' Claims for Breach of a Fiduciary Relationship and Intentional Infliction of Mental Distress was Proper on Other Grounds.

¶17 Although not every claim was waived under A.R.S. § 33-811(C), we may affirm the dismissal of a complaint for reasons other than those specifically relied upon by the trial court. *See Linder v. Brown & Herrick*, 189 Ariz. 398, 402, 943 P.2d 758, 762 (App. 1997) (citing *Earthworks Contracting Ltd. v. Mendel-Allison Constr. of Cal., Inc.*, 167 Ariz. 102, 109, 804 P.2d 831, 838 (App. 1990)). With this principle in mind, we conclude the Glavas' claims for breach of a fiduciary relationship and intentional infliction of mental distress were also properly dismissed.

### A. Breach of a Fiduciary Relationship Claim

¶18 The Glavas' claim for breach of fiduciary relationship against the Bank was properly dismissed because the claim is based upon an erroneous legal premise. In Arizona, absent a special agreement, a debtor/creditor relationship does not create a fiduciary relationship. *See McAlister v. Citibank (Ariz.)*, 171 Ariz. 207, 212, 829 P.2d 1253, 1258 (App. 1992) (determining bank owed no fiduciary duty to customer); *cf. Stewart v. Phx. Nat'l Bank*, 49 Ariz. 34, 44, 64 P.2d 101, 106 (1937) (concluding a special relationship existed between debtor and creditor only because the bank's officers and directors acted as the debtor's financial advisors for twenty-three years). There is no evidence indicating a special relationship existed here and, therefore, this claim, based upon such a relationship, necessarily fails, and was properly dismissed.

### B. Intentional Infliction of Mental Distress Claim

¶19 The Glavas' claim for intentional infliction of mental distress was also properly dismissed. To maintain this claim, a plaintiff must allege

(1) the defendant committed extreme and outrageous conduct, (2) the defendant intended to cause emotional distress or recklessly disregarded the near certainty that his conduct would cause distress, and (3) the plaintiff in fact suffered severe emotional distress as a result of the defendant's conduct. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). Because the complaint failed to allege the Glavas suffered actual severe mental or emotional distress or any facts from which we could infer such distress occurred, this claim was properly dismissed.

### III. The Fraud and Consumer Fraud Claims were Pleaded with Particularity.

**¶20** The elements of fraud must be pleaded with particularity. *Spudnuts, Inc. v. Lane*, 131 Ariz. 424, 425, 641 P.2d 912, 913 (App. 1982). No particular language is required so long as the elements are included in the pleading when considered as a whole. *Id.* at 426, 641 P.2d at 914.

**¶21** The Bank argues the Glavas failed to state with particularity the time, place, and specific content of the misrepresentation, as well as by whom the misrepresentations were made. We disagree. In addition to alleging the Bank had represented the trustee's sale would be cancelled if the HAMP agreement was approved, the Glavas attached a copy of that agreement to their complaint. The HAMP agreement provided: "The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date . . . ." This provision indicates any past due amounts would be rolled into a new principal balance. Had the original default been forgiven as anticipated, there remained no basis for a trustee's sale, and the existing notice of sale should have been cancelled, as the Glavas' complaint asserts they were promised. These allegations, then, supply the who, what, when, and content elements the Bank asserts were absent from the pleading. Thus, the Glavas' fraud claims were pleaded with sufficient particularity to defeat the motion to dismiss.

### IV. The Glavas' Remaining Claims are Viable.

**¶22** Lastly, the Bank argues all the claims were properly dismissed because they failed to state a claim upon which relief could be granted. Specifically, the Bank asserts the Glavas failed to comply with the HAMP agreement by failing to make the scheduled September 1 payment and that the agreement therefore never became effective. And, as each claim is contingent upon a validly executed agreement, the Glavas failed to state a claim upon which relief could be granted. We disagree.

¶23            "[T]he interpretation of a contract is a question of law, which this court reviews de novo."  *Grosvenor Holdings, [L.]L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9, 218 P.3d 1045, 1050 (App. 2009) (citing *Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 434, ¶ 37, 167 P.3d 111, 121 (App. 2007)).   The Glavas allege within their complaint that the HAMP agreement was executed, which we accept as true.  *See Fid. Sec. Life*, 191 Ariz. at 224, ¶ 4, 954 P.2d at 582.  This allegation is also supported by the terms of the HAMP agreement itself, which was submitted with the Glavas' amended complaint.  Section 1 of the HAMP agreement required the Glavas to make several representations and covenants regarding their financial health, the correctness of the documents provided in support of the modification, and their continuing ownership of the property at issue.  Section 2 set forth the following acknowledgments and preconditions to modification:

> A.  If prior to [September 1, 2012] the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

> B.   I understand that the Loan Documents will not be modified unless and until (i) *the Lender accepts this Agreement by signing and returning a copy of it to me*, and (ii) [September 1, 2012] has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

(Emphasis added). Section 3 of the agreement specified the effect of the modification:

> The Modification.  If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on SEPTEMBER 01, 2012 . . . and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect.  The first modified payment will be due on SEPTEMBER 01, 2012.

**¶24** The Glavas signed the document on August 25, 2012, the September 1, 2012 passed, and the Bank's representative signed and returned the agreement on September 7, 2012. The Bank does not claim the covenants and representations from Section 1 were untrue or that the acknowledgements and preconditions from Section 2 were violated. Rather, the Bank, seizing upon the last sentence of Section 2(B), argues the HAMP agreement became a nullity once the Glavas failed to make the first modified payment on September 1, 2012, as scheduled. And that as a result, it was free to proceed with the previously noticed trustee's sale premised upon the Glavas' breach of the original agreement. But the Bank's argument conflicts with the plain language of the agreement, which simply states when the first *modified* payment would be due; the agreement does not make the effectiveness of the HAMP agreement contingent upon actual payment.[6] *Grosvenor Holdings*, 222 Ariz. at 593, ¶ 9, 218 P.3d at 1050 (noting the purpose of contract interpretation is to determine and enforce the parties' intent, and the first step in achieving that goal is considering "the plain meaning of the words in the context of the contract as a whole"). Instead, the agreement, by its plain terms, became effective automatically when it was signed by both parties, the effective date occurred, and the preconditions and representations were satisfied and remained true as of that effective date. To construe the last sentence in Section 2(B) as the Bank wishes would essentially create a *nudum pactum*,[7] whereby any missed

---

[6]      Although Section 3 of the HAMP agreement states the modification will not take effect if the Glavas "failed to make any payments as a precondition to this modification under a trial period plan," the Bank does not contend, and the agreement does not state, that the September 1, 2012 payment was part of a "trial period plan" or that any such "trial period plan" was ever in force. Moreover, the agreement itself refers to the September 1, 2012 payment as "the first modified payment" rather than a pre-condition to the agreement's effectiveness. Further, the Bank does not contend that as a result of the missed September payment it refused to execute the HAMP agreement. In fact, the Bank proceeded with and executed the HAMP agreement even after the September 1, 2012 payment was not made.

[7]      *Nudum pactum* means "[a]n agreement that is unenforceable as a contract because it is not 'clothed' with consideration." Black's Law Dictionary (9th ed. 2009).

payment would not result in a new default of the modified agreement, but rather would completely nullify it as if it had never existed.[8]

¶25         Further, Section 2(B) merely states the Bank would not be obligated or bound to make a modification if all the requirements of the HAMP agreement were not met.  Here, the payment due on September 1, 2012, was not made, but the Bank signed and returned the document after that date.  Thus, even assuming payment was a "requirement," in which case the Bank would not have been bound to make the modification, it proceeded to finalize the modification despite the non-payment. Moreover, the Glavas also alleged, and no one denies, that after September 1, 2012, they communicated with the Bank regarding the calculation of the modified payment amount under the HAMP agreement, and the Bank thereafter sent them a payment coupon-book so they might proceed under the terms of the HAMP.  These allegations support the Glavas' contentions that the Bank represented that the HAMP agreement was in place and did not purport the Glavas to be in default.

## V.      Attorneys' Fees and Costs on Appeal

¶26         The Bank requests its attorneys' fees on appeal as a sanction pursuant to A.R.S. § 12-349.  However, because we find no basis for such an award, and the Bank has presented no argument in support of its request, we deny its request.

¶27         The Bank also requests an award of attorneys' fees under A.R.S. § 12-341.01(C), which, as amended, no longer provides a basis for such a request.  *Compare* A.R.S. § 12-341.01(C) (2015), *with* A.R.S. § 12-341.01(C) (2011).  We interpret the Bank's citation to refer to the correct subsection of the current version, A.R.S. § 12-341.01(A), but in our discretion deny its request.

¶28         The Glavas also request an award of attorneys' fees on appeal but cite no basis for the award.  Arizona Rule of Civil Appellate Procedure 21(a)(2) (2014) sets forth the timing and content requirements for a notice of a request for attorneys' fees, and states:

---

[8]      The HAMP agreement does not contemplate this result.  Section 3(D) provides that the debtor will be in default if he does not "comply with the terms of the Loan Documents, as modified by this Agreement."   As the modified payment schedule, including the first modified payment, was a term of the HAMP agreement, the failure to make the payment might result in a breach of the agreement rather than its nullification.

A notice under this Rule must specifically state the statute, rule, decisional law, contract, or other provision authorizing an award of attorneys' fees. If a party fails to comply with this subsection, the appellate court may decline to award fees on that basis.

Thus, although we have the discretion to decline an award on this basis, *see Country Mut. Ins. Co. v. Fonk*, 198 Ariz. 167, 172, ¶ 25, 7 P.3d 973, 978 (App. 2000), we decline to exercise that discretion here, and instead consider the Glavas' request to be supported by A.R.S. § 12-341.01(A). Should the Glavas prevail on remand, the trial court is authorized to consider the fees incurred by them during this appeal in making a fee award. Additionally, as the successful party, we award the Glavas their costs on appeal, subject to their compliance with ARCAP 21.

## CONCLUSION

**¶29** We affirm the trial court's dismissal of the Glavas' claims for false recording, wrongful forfeiture, breach of a fiduciary relationship, and intentional infliction of mental distress. We reverse the dismissal of their claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and consumer fraud, and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED: ama

13